# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

MICKEY MCWHIRTER,
ADC #84977                                                                              PLAINTIFF

V.                                   2:12CV00199 SWW/JTR

RAYLINA RAMSEY,
Classification Officer, Grimes Unit, et al.                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the

United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>   Clerk, United States District Court
>   Eastern District of Arkansas
>   600 West Capitol Avenue, Suite A149
>   Little Rock, AR 72201-3325

## I. Introduction

Plaintiff, Mickey McWhirter, is a prisoner in the Tucker Unit of the Arkansas Department of Correction ("ADC"). He has filed this *pro se* § 1983 action alleging that Defendants Ramsey, Hopkins, Horn, and Cowell violated his constitutional rights

by forcing him to work four days on the hoe squad at the Grimes Unit.[1] *Docs. 2 & 4.*

Defendants Cowell, Horn, and Hopkins have collectively filed a Motion for Summary Judgment, while Defendant Ramsey has filed a separate Motion for Summary Judgment.[2] *Docs. 62 through 67.* Although he was directed to do so, Plaintiff has not responded to the Motions for Summary Judgment and the time for doing so has expired.[3] Thus, pursuant to Local Rule 56.1(c), the relevant facts in Defendants' summary judgment papers are deemed admitted. Those facts are as follows:

1. In 1999, prior to his imprisonment, Plaintiff injured his left leg and knee in a logging accident. As a result, he had two surgeries, one of which involved a metal rod being placed in his lower leg. *Doc. 2.*

---

[1] On May 15, 2013, Plaintiff voluntarily dismissed his claims against all other Defendants. *Doc.53.*

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[3] On October 22, 2013, the Court gave Plaintiff thirty days to file Responses to Defendants Motions for Summary Judgment. *Doc. 69.* Importantly, Plaintiff was advised that the facts in Defendants' summary judgment papers would be deemed admitted if he failed to timely do so. *Id.* The Court subsequently gave Plaintiff two extensions of time to file his Response. *Docs. 72 & 74.* He never did so.

2. On May 31, 2012, Plaintiff began his latest incarceration in the ADC.[4] During a physical examination at the Intake Unit, an APN noted that Plaintiff had "slightly limited mobility" due his prior leg injury. She gave Plaintiff an M-2 medical classification, without any work restrictions.[5] *Doc. 64, Ex. 1.*

3. On or about June 7, 2012 Plaintiff arrived at the Grimes Unit where he received a lower bunk assignment and a soft knee brace. *Doc. 64, Ex. 1; Doc. 70, Ex. F.*

4. On June 11, 2012, the Grimes Unit Classification Committee, which included Defendant Raylina Ramsey, assigned Plaintiff to the hoe squad. *Doc. 64, Exs. 2, 3, & 8.* That decision was consistent with the Classification Committee's general practice of assigning all new inmates with M-1 and M-2 classifications, and no work restrictions, to the hoe squad. *Id., Ex. 8.*

5. During the next three days, Plaintiff filed several informal resolutions and sick call requests challenging his assignment to the hoe squad. Specifically, he alleged that, during his 2001 and 2004 incarcerations, he received work restrictions that exempted him from heavy labor. *Doc. 67, Ex. B; Doc. 70, Ex. F.* In her

---

[4] Plaintiff was previously incarcerated in the ADC in 2001 and 2004. *Doc. 2.*

[5] An M-1 classification means no medical restrictions. An M-2 classification means that an inmate has "some medical restrictions but can be given any work assignment where those restrictions can be honored, including work in the field." *Doc. 34, Ex. M.*

responses, Defendant Grievance Coordinator Jennifer Horn explained to Plaintiff that his job assignment was correct because he did not have any *current* work restrictions.[6] She also contacted the unit physician, who instructed her to order Plaintiff's archived medical records for review. *Doc. 67, Ex. C; Doc. 70, Ex. F.*

6. On June 15, 2012, Plaintiff worked on the hoe squad. *Doc. 67, Exs. A & B.*

7. On June 18, 2012, Plaintiff filed a sick call request asking to speak to the unit physician "about some problems I am having and to try to get him to give me a better knee brace." Importantly, Plaintiff did not describe those "problems" and his requests for a "better knee brace" suggests that, with such a brace, he might be able to perform his job assignment on the hoe squad. *Doc. 70, Ex. F-11.*

8. On June 19 and 20, 2012, Plaintiff worked on the hoe squad. *Doc. 67, Exs. A & B.*

9. On June 21, 2012, Plaintiff filed two informal resolutions alleging, for the first time, that working on the hoe squad was causing his left knee and leg to become swollen and painful, and that he was having difficulty walking. Plaintiff asked that he be removed from the hoe squad and receive work restrictions exempting

---

[6] Prior work restrictions are not automatically reinstated when a prisoner returns to the ADC. Instead, an APN or unit physician must re-evalate a returning prisoner and determine whether work restrictions should be imposed. *Doc. 70, Ex. F.*

him from heavy labor.  *Doc. 67, Ex. C.*

    10.    On June 23, 2012, Defendant LPN Emily Hopkins examined Plaintiff in the prison infirmary.  Plaintiff reported that his left leg and knee were hurting badly from working on the hoe squad.  Defendant Hopkins did *not* detect any swelling, redness, or tenderness in Plaintiff's left leg or knee. Similarly, Plaintiff did not demonstrate any difficulty walking. Because Plaintiff did not exhibit any current symptoms, Defendant Hopkins was unable to give Plaintiff a lay-in (which is a temporary work release) from the hoe squad. However, she did give him ibuprofen and referred him to the unit doctor for further evaluation.  X-rays taken a few days later showed that Plaintiff's 1999 leg injuries had healed, and that he had no current abnormalities.  *Doc. 67, Ex. C; Doc. 70, Ex. F.*

    11.    On June 25, 2012, Plaintiff worked on the hoe squad for his fourth and final day.  *Doc. 67, Exs. A & B.*

    12.    On June 26 and 28, 2012, Plaintiff filed an informal resolution and a sick call request claiming that he had sustained a *new injury*, this time to his groin, while working on the hoe squad.  *Doc. 67, Ex. C;  Doc. 70, Ex. F.*

    13.    On July 1, 2012, an LPN examined Plaintiff and determined that he had a hard knot in his lower left abdomen that was painful upon palpation.  She gave Plaintiff a seven day lay-in and referred him to the unit physician. *Doc. 70, Ex. F.*

14. On July 2, 2012, an APN examined the knot in Plaintiff's groin. He gave Plaintiff a work restriction excluding him from any prolonged crawling, stooping, running, jumping, walking, or standing. Consistent with that medical restriction, Defendant Ramsey changed Plaintiff's work assignment to the utility squad. *Doc. 64, Exs. 1 & 4; Doc. 70, Ex. F.*

15. On July 6, 2012, the unit physician examined Plaintiff and diagnosed him with a non-urgent inguinal hernia.[7] He gave Plaintiff a hernia belt, and increased his work restrictions to no strenuous physical activity and no lifting more than five pounds. Consistent with those revised work restrictions, Defendant Ramsey changed Plaintiff's work assignment to building utility.[8] Plaintiff had no further complaints about his job assignment. *Doc. 64, Exs. 1 & 4; Doc. 70, Ex. F.*

16. Dr. Nance, who was the Grimes Unit physician as well as Plaintiff's treating physician, has filed an *unrefutted* declaration stating that, in his professional medical opinion: (a) it was medically appropriate for Plaintiff to be initially assigned to the hoe squad because the 1999 injuries to his left knee and leg had adequately healed; (b) Plaintiff suffered no further damage to his left leg or knee as a result of working on the hoe squad for four days; (c) nothing in Plaintiff's medical history or

---

[7] Plaintiff's hernia was surgically repaired on an unspecified later date. *Doc. 70, Ex. F.*

[8] Because Plaintiff received a seven day lay in on July 1, 2012, it is unlikely that he ever worked on the utility squad before he was reassigned to building utility on July 6, 2012.

physical examinations suggesting that he might get a hernia while working on the hoe squad; (d) hernias often develop, without any prior warning, due to straining; and (e) Plaintiff's work restrictions and job assignments were promptly and properly modified after his non-urgent hernia was discovered. *Doc. 70, Ex. F.*

## II.  Discussion

A.  **Defendant Ramsey's Motion for Summary Judgment**

    1.  **Cruel and Unusual Punishment Claim**

Plaintiff alleges that Defendant Ramsey subjected him to cruel and unusual punishment when she assigned him to the hoe squad, despite the prior injuries to his lower left leg. *Docs. 2 & 4.* To prevail on that claim, Plaintiff must demonstrate that Defendant Ramsey "knowingly compelled" him to "perform physical labor that was beyond his strength, dangerous to his health, or unduly painful." *Mays v. Rhodes*, 255 F.3d 644, 649 (8th Cir. 2001); *see also Choate v. Lockart*, 7 F.3d 1370, 1374 (8th Cir. 1993).

It is undisputed that: (1) On June 11, 2012, Plaintiff did not have any medical restrictions in the work he could perform; and (2) Defendant Ramsey had *no medical training*. Thus, in assigning Plaintiff to the hoe squad on June 11, 2012, Defendant Ramsey was entitled to rely on the medical personnel's determination that his 1999 injuries did not warrant any work restrictions. *See Pitts v. Carrol,* Case No. 99-2695,

2000 WL 276973 (8th Cir. March 15, 2000) (unpublished opinion) (finding no constitutional violation when administrators assigned a prisoner with high blood pressure to the hoe squad after prison medical personnel classified the prisoner as M-2, without any work restrictions); *Moore v. Moore*, Case No. 03-2419, 2004 WL 1918766 (8th Cir. Aug. 27, 2004) (unpublished opinion) (prison administrators were allowed to rely on the medical personnel's decision that a prisoner with advanced osteoarthritis in his back could work on the yard crew).

Additionally, it is *undisputed* that Defendant Ramsey's decision was consistent with ADC policy and the Classifications Committee's general practice of assigning new M-2 inmates, without any work restrictions, to the hoe squad.

Finally, it is *undisputed* that when the prison medical personnel later decided to imposed work restrictions, on July 2 and 6, 2012, Defendant Ramsey promptly changed Plaintiff's job assignments. *See Moore,* 2004 WL 1918766 (finding no constitutional violation where prison officials adjusted a prisoner's work assignments in compliance with increasing work restrictions imposed by medical personnel). Accordingly, Defendant Ramsey is entitled to summary judgment, and the cruel and unusual punishment claim raised against her should be dismissed, with prejudice.

    **2.    Retaliation Claim**

Plaintiff alleges that, during the June 8, 2012 orientation for new Grimes Unit

prisoners, he and Defendant Ramsey had an argument about the meaning of unspecified ADC policies. *Doc. 2.* Although the allegations in the Complaint are vague, Plaintiff may be asserting that Defendant Ramsey assigned him to the hoe squad, on June 11, 2012, in retaliation for him challenging her interpretation of ADC policies. *Id.*

A private citizen cannot be retaliated against for exercising his First Amendment right to speak about a matter of "public concern," which is defined as a matter relating to "political, social, or community concern." *Dahl v. Rice City, Minn.*, 621 F.3d 740, 744 (8th Cir. 2010); *see also Cornell v. Woods*, 69 F.3d 1383, 1387-88 (8th Cir. 1995). It is unclear whether Plaintiff's argument with Defendant Ramsey about the interpretation of ADC policies would constitute a matter of public concern.

However, even if the Court were to assume that Plaintiff has asserted a viable retaliation claim against Defendant Ramsey, it is *undisputed* (*Docs. 64, Exs. 7 & 9)* that he never raised that claim during the prison grievance process. *See* 42 U.S.C. § 1997e(a); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000) (explaining that a prisoner must fully and properly exhaust his administrative remedies in regard to each claim before filing a lawsuit in federal court). Thus, Plaintiff's retaliation claim should be dismissed, without

prejudice, due to a lack of exhaustion.[9] *Jones v. Bock*, 549 U.S. 199, 211 (2007) (explaining that: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

**B.    Defendant Hopkins, Horn, and Cowell's Motion for Summary Judgment**

**1.    Inadequate Medical Care Claim against Defendant Hopkins**

Plaintiff alleges that, on June 23, 2012, Defendant LPN Emily Hopkins failed to provide him with constitutionally adequate medical care when she refused to give him a lay-in that temporarily excused him from working on the hoe squad.[10] *Docs. 2 & 4.* To proceed with that claim, Plaintiff must present evidence demonstrating that: (1) he had an objectively serious medical need for a lay in; and (2) Defendant Hopkins subjectively knew of, but deliberately disregarded, that serious need. *Langford v.*

---

[9] The retaliation claim against Defendant Ramsey also fails, as a matter of law, because there is *no evidence* that she assigned Plaintiff to the hoe squad for retaliatory reasons. *See Haynes v. Stephenson*, 588 F.3d 1152, 1157 (8th Cir. 2009) (a prisoner must demonstrate that "retaliation was the actual motivating factor" and that the adverse consequence would not have occurred "but for a retaliatory motive"). To the contrary, the *unrefutted* evidence demonstrates that Defendant Ramsey's decision was consistent with Plaintiff's work classifications, ADC policies, and the Classifications Committee's general practices. However, the Eighth Circuit has clarified that a trial court cannot resolve the merits of an unexhausted claim, and instead, must dismiss the unexhausted claim without prejudice. *Davis v. Harmon,* Case No. 10-1863, 2010 WL 3259378 (8th Cir. Aug. 19, 2010) (unpublished opinion); *Barbee v. Corr. Med. Servs.* Case No. 10-1891, 2010 WL 3292789 (8th Cir. Aug. 23, 2010) (unpublished opinion).

[10] As previously mentioned, only an APN or the Unit Physician could alter Plaintiff's work restrictions. As an LPN Defendant Hopkins lacked the authority to do so. However, she did have the authority to give Plaintiff a temporary lay-in that excused him from work for a short period of time, until an APN or Unit Physician could determine whether his work restrictions should be modified. *Doc.67, Ex. D; Doc. 70, Ex. F.*

*Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

The *undisputed* evidence establishes that Defendant Hopkins examined Plaintiff in the infirmary two days after he filed informal resolutions alleging that his work on the hoe squad was hurting his left leg and knee. It is also *undisputed* that, during the June 23, 2012 physical examination, Plaintiff did *not* have any tenderness, swelling, redness, or difficultly walking. Thus, Defendant Hopkins did not act with deliberate indifference when she determined that a temporary lay-in was unwarranted. *Langford,* 614 F.3d at 460 (a deliberate indifference claim cannot be based on negligence, gross negligence, or a disagreement with the course of care); *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998) (defining "deliberate indifference" as "actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness"). Finally, Defendant Hopkin's decision was later affirmed by: (1) x-rays that showed no current abnormalities in Plaintiff's leg or knee; and (2) Dr. Nance's unrefutted medical opinion that working on the hoe squad for four days did not damage Plaintiff's knee or leg.

Accordingly, Defendant Hopkins is entitled to summary judgment, and Plaintiff's inadequate medical care claim against her should be dismissed, with

prejudice.[11]

**2.      Corrective Inaction Claims Against Defendants Horn and Cowell**

Plaintiff alleges that Defendant Medical Grievance Officer Jennifer Horn and Health Services Administrator Billy Cowell violated his constitutional rights when they failed to take proper corrective action in response to his informal resolutions and grievances.[12] *Docs. 2 & 4.* That claim fails, as a matter of law, because Plaintiff has failed to demonstrate that his constitutional rights were violated. *See Parrish v. Ball,* 594 F.3d 99, 1002 (8th Cir. 2010) (explaining that, to prevail on a corrective inaction claim, a prisoner must establish that the defendants were aware that his constitutional rights were being violated, but failed to take corrective action)*; Sims v. Lay*, Case No. 05-2136, 2007 WL 328769 (8th Cir. Feb. 2, 2007) (unpublished decision) (holding that a supervisory liability claim fails, as a matter of law, when there has been no underlying constitutional violation).

The *unrefutted evidence* establishes that Defendant Horn: (1) promptly investigated Plaintiff's informal resolutions and grievances; (2) contacted the unit

---

[11] Plaintiff did not report any problems with his groin or other hernia symptoms until *after* his June 23, 2013 appointment with Defendant Hopkins. Thus, the only inadequate medical care claim he has asserted against Defendant Hopkins relates to her examination of his left leg and knee on June 23, 2012.

[12] Defendant Horn investigated and responded to Plaintiff's informal resolutions. She also investigated Plaintiff's grievances and made a recommendation to Defendant Cowell. After reviewing the necessary documents and speaking with Plaintiff, Defendant Cowell resolved Plaintiff's grievances. *Doc. 67, Exs. C & E.*

physician about ordering his archived medical records and scheduling x-rays of his left knee and leg; (3) ensured that Plaintiff had been examined by Defendant Hopkins in response to his allegations of knee and leg pain; and (4) verified that medical personnel had examined Plaintiff in response to his allegations of groin pain and issued him a lay-in and work restrictions. *Doc. 67, Ex. C.*

As for Defendant Cowell, it is *undisputed* that he did not review Plaintiff's grievances until July 18, 2012, which was *after* Plaintiff had received his requested work restrictions and job reassignments. *Doc. 64, Ex. D.*

Thus, Defendants Horn and Cowell are entitled to summary judgment, and the corrective inaction claims against them should be dismissed, with prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Ramsey's Motion for Summary Judgment (*Docs. 62*) be GRANTED, and that cruel and unusual punishment claim raised against her be DISMISSED, WITH PREJUDICE, while the retaliation claim raised against her be DISMISSED, WITHOUT PREJUDICE.

2. Defendant Horn, Hopkins, and Cowell's Motion for Summary Judgment (*Docs. 65*) be GRANTED, and all claims raised against them be DISMISSED, WITH PREJUDICE.

3.	The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommended Disposition would not be taken in good faith.

Dated this 21st day of March, 2014.

_____
UNITED STATES MAGISTRATE JUDGE